**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

**\*\*\***

UNITED STATES OF AMERICA

                 Plaintiff,

vs.

CHRISTOPHER CANTON,

                 Defendant.

2:12-cr-00276-APG-VCF-1

REPORT AND RECOMMENDATION ON

MOTION TO SUPPRESS (#28)

**REPORT & RECOMMENDATION**

       Before the court is defendant Christopher Canton's Motion to Suppress (#28).  The government filed an Opposition (#32), and the defendant did not file a Reply.  Sergeant Burnett, Officer Ploense, and Parole and Probation Officer Musheno testified at an evidentiary hearing held on August 9, 2013.

       Defendant Canton is charged with possession of a firearm by a convicted felon, a violation of 18 U.S.C. § 922(g)(1).  (#1).  Defendant Canton seeks an order suppressing all tangible and testimonial evidence seized during the stop conducted on or about July 10, 2012.  (#28).  Canton argues that the officers should have immediately sought a warrant to search the car, and that they did not do so because they "consciously chose to engage on a fishing expedition and did not want to be bothered following protocols which exist to protect citizens, even probationers, from unreasonable searches and seizures." *Id.*

**SUMMARY OF DECISION**

The Government sustained its burden of proving by a preponderance of the evidence that the officers that stopped defendant Canton had probable cause to believe that Canton had committed a traffic violation.

The Government also sustained its burden of proving by a preponderance of the evidence that (1) defendant Canton is a probationer subject to a warrantless search condition, (2) the searching officers knew this fact before searching defendant Canton's car, and (3) the search did not violate defendant's Fourth Amendment right of privacy.

Accordingly, the Motion to Suppress (#28) should be DENIED.

**FACTS**

On July 10, 2013, Sergeant Burnett and Detective Ploense were patrolling the area of Vegas Valley and Mountain Vista in separate unmarked police cars. (#45). Sergeant Burnett testified that this area was associated with "gang activity," and that the police often patrolled the area. *Id.* Sergeant Burnett and Detective Ploense received information of a black SUV in the area with a possible gun inside. *Id.* Sergeant Burnett testified on cross-examination that he did not remember where the information on the black SUV originated from, and Detective Ploense testified that he received the information from Sergeant Burnett. *Id.* Detective Ploense testified that the officers were often "briefed" before their shift regarding this type of information, but that he did not recall if such a "briefing" occurred that morning. *Id.* Sergeant Burnett testified that there were several unmarked police cars patrolling the area, and that the officers saw many black SUVs during their patrol. *Id.*

Sergeant Burnett testified that a black SUV matching the description was seen by patrolling detectives Ploense and Clarkson and identified as a black Lincoln Navigator (hereinafter "Suspect Car"). *Id.* Detective Ploense testified that he saw the Suspect Car drive into an apartment complex, stay there for a moment, and then exit. *Id.* Detective Ploense witnessed the Suspect Car driving on

Woodland and turning on Aloha, and followed the car.  *Id.*  Sergeant Burnett testified that he ran the plates[1] of the Suspect Car in his mobile data terminal.  *Id.*  Sergeant Burnett learned that the registered owner of the Suspect Car was defendant Christopher Canton and that the registration of the Suspect Car was suspended.  *Id.*

Sergeant Burnett testified that the mobile data terminal also cross-checks registered owners for outstanding warrants, tickets, etc., and that the cross-check on the registered owner, defendant Canton, revealed that he was a probationer.  *Id.*  Sergeant Burnett learned through the cross-check that defendant Canton agreed to a special probation condition that he would not drive without a valid driver's license. *Id.*   Sergeant Burnett testified that he decided to conduct a traffic stop of the Suspect Car due to the suspended registration.  *Id.*  Detective Ploense testified that Sergeant Burnett used his lights to pull over the Suspect Car and did not engage his sirens.  *Id.*  The stop occurred at approximately 6:00 p.m.  *Id.* Sergeant Burnett testified that the Suspect Car was not speeding, weaving, driving erratically, or violating any other traffic laws, and that the decision to stop the Suspect Car was based solely on the fact that the registration was suspended.  *Id.*

Detectives Ploense and Clarkson followed behind Sergeant Burnett to assist in the stop.  *Id.* Sergeant Burnett testified that once the Suspect Car pulled over, he approached the driver's side door, Detective Floense approached the passenger side door, and Detective Clarkson stayed behind the Suspect Car.  *Id.*   Detective Ploense testified that he made contact with the passenger, and that after asking her routine questions, he identified her as Danielle First.  *Id.*  Detective Ploense testified that he could not recall if he was aware of defendant Canton's status as a convicted felon at this time, and that he could not recall if he asked the passenger for consent to search the car, but that he knows he did not receive consent.  *Id.*  Sergeant Burnett asked the driver for his driver's license and insurance, and, using the driver's license, identified the driver of the car as being the registered owner, defendant Canton.  *Id.*

---

[1] Detective Ploense testified that he did not run the license plate of the Suspect Car, but that another officer did and conveyed to him that the registration was suspended.  (#45).

Sergeant Burnett testified during the hearing that the driver of the Suspect Car on the day in question was defendant Canton, who was present and in custody in the courtroom.  *Id.*   Sergeant Burnett also testified that defendant Canton's driver's license was suspended, and that he found this to be significant in light of defendant's special probation condition.  *Id.*  Sergeant Burnett testified on cross-examination that he does not recall whether he asked defendant Canton if he could search the car, but that he most likely ask for permission and was denied.  *Id.*   No search of the car was conducted at this time.  *Id.*

Sergeant Burnett asked defendant Canton to step out of the Suspect Car and brought him in front of his unmarked police car.  *Id.*  Sergeant Burnett spoke to defendant Canton for approximately thirty minutes total, and testified that he could not recall if he immediately handcuffed defendant Canton.  *Id.* Sergeant Burnett testified that the passenger was taken out of the car as well, so that the officers could corroborate stories.  *Id.*  Detective Ploense testified that he asked the passenger, Danielle, to step out of the car and took her in front of the other unmarked patrol car.  *Id.*

After speaking with defendant Canton, Sergeant Burnett contacted Parole and Probation (hereinafter "P&P") Officer Musheno, and explained that he had pulled over the Suspect Car, that the driver was a probationer with a special condition not to drive without a valid driver's license, and that the driver presented the officers with a suspended license.  *Id.*   P&P Officer Musheno testified that he did not know the identity of the probationer at that time, and that he was not the defendant's supervising officer.  *Id.*  P&P Officer Musheno testified that the P&P Office, especially those P&P Officers assigned to the gang unit, works closely with the Las Vegas Metropolitan Police Department.  *Id.*  P&P Officer Musheno arrived at the scene of the traffic stop approximately 10-15 minutes after being contacted.  *Id.* Detective Ploense testified that P&P Officer Musheno was briefed on the situation when he arrived, and P&P Officer Musheno testified that he learned that the probationer was defendant Canton at that time. *Id.*

4

P&P Officer Musheno spoke briefly with defendant Canton, and defendant Canton stated that he did not know that his driver's license was suspended. *Id.* P&P Officer Musheno testified that he did not ask for consent to search the Suspect Car. *Id.* Based on his discussion with defendant Canton, P&P Officer Musheno decided to invoke the warantless search clause[2] of defendant Canton's Probation Agreement, and informed defendant Canton of his decision. *Id.* The government admitted into evidence during the hearing a document titled "Probation Agreement and Rules Order Permitting Defendant to Probation and Fixing the Terms Thereof" (hereinafter "Probation Agreement"), and marked it as Exhibit 1. *Id.* The Probation Agreement was signed[3] by defendant Canton on February 28, 2011, and contains, at numbers 1-12 on page 1, a list of "standard conditions," and, at numbers 1-6 on page 2, a list of "special conditions." *Id* (Exhibit 1). Standard condition No. 6, titled "Search," states that "[y]ou shall submit your person, place of residence, vehicle or areas under your control to search at any time, with or without a search warrant or warrant of arrest, for evidence of a crime or violation of probation by the Division of Parole and Probation or its agent." *Id.* Special condition No. 2 provides: "Do not drive without a valid driver's license." *Id.*

Detective Ploense testified that P&P Officer Musheno asked for assistance with the search of the Suspect Car. *Id.* Detective Ploense testified that he was aware that defendant Canton was a probationer and that he had prior felonies before he searched the car. *Id.*

Detective Ploense approached the passenger side to conduct the search, and P&P Officer Musheno approached the driver's side. *Id.* Detective Ploense testified that he scanned the passenger side area, conducted a "cursory search" of the area, and that the door panels appeared to be loose. *Id.* Detective Ploense did not remove or search behind the door panels. *Id.* Detective Ploense also stated that the area of the center console around the cup holders appeared to not be "flush" with the cup

---

[2] Testimony was presented during the hearing relating to a search of defendant's house pursuant to the warrantless search clause contained in defendant Canton's Probation Agreement. (#45). The search of the house is not relevant to the issue before the court and the court will not address it.

[3] Defendant Canton did not dispute the authenticity of the signature or that the Probation Agreement admitted as Exhibit 1 was a true and accurate copy.

holders, as if the cup holders had been removed in the past. *Id.* Detective Ploense testified that he "popped" up the cup holder with his finger from the side, and looked into the compartment under the cup holders. *Id.* P&P Officer Musheno testified that the cup holders appeared to be very loose, and that he observed Detective Ploense easily lift up the cup holders. *Id.* Detective Ploense testified that he initially saw two prescription pill bottles, and then discovered one semi automatic handgun in the compartment under the cup holders. *Id.* Detective Ploense testified that he prepared an arrest report in this action, and admitted that the arrest report did not mention him "popping up" the cup holder. *Id.* Detective Ploense testified that the handgun was placed upside down, with the handle upright, so that the driver could easily access the gun. *Id.* P&P Officer Musheno testified that he had a good view inside the compartment under the cup holders, and that Detective Ploense directed his attention to the handgun inside. *Id.* Once Detective Ploense discovered the gun and pill bottles, he told P&P Officer Musheno to stop searching the car. *Id.* P&P Officer Musheno testified that he stopped searching the driver's side area when Detective Ploense found the gun and pill bottles. *Id.*

After the contraband was discovered in the Suspect Car, the car was "frozen" for the officers to obtain a telephonic search warrant. *Id.* Detective Ploense testified that Detective Clarkson applied for the telephonic search warrant, and that it wasn't until sundown when the warrant was approved. *Id.* Sergeant Burnett testified that it took a long time to obtain the telephonic search warrant. *Id.* After the approval of the telephonic search warrant, Detective Ploense put on rubber gloves, and retrieved the gun and pill bottles from the Suspect Car and placed them in a bag for evidence. *Id.* P&P Officer Musheno testified that he helped search the car after the search warrant was obtained, and that the search did not yield any other contraband.

## DISCUSSION

In the instant motion to suppress, defendant Canton asks this court to suppress "all evidence seized as a result of the illegal stop, as well as any and all statements officers allege [defendant] made at

the time of the stop."  (#28).  Defendant Canton argues that the officers should have immediately sought a search warrant if they wanted to search the car, and that they did not do so because they "consciously chose to engage on a fishing expedition and did not want to be bothered following protocols which exist to protect citizens, even probationers, from unreasonable searches and seizures."  *Id.*    During the hearing, defendant argued that although defendant has a smaller expectation of privacy as a probationer, the search conducted before the search warrant was obtained went beyond the scope of a permissible search under the Probation Agreement's search clause.  (#45).

In an evidentiary hearing on a motion to suppress evidence due to an alleged Fourth Amendment violation, the Government bears the burden of justifying a warrantless search.  *United States v. Johnson*, 936 F.2d 1082, 1084 (9th Cir. 1991).  The court finds that two issues must be addressed:

(1) whether the officers had reasonable suspicion/probable cause to stop the Subject Car, and

(2) whether defendant was a probationer subject to a warrantless search clause, whether the searching officers knew defendant was a probationer subject to such a warrantless search clause <u>before</u> searching the Subject Car, and whether the scope of the search unreasonably intruded on defendant's expectation of privacy.

**A.     Fourth Amendment**

The Fourth Amendment guarantees individuals the right "to be secure in their persons . . . against unreasonable searches and seizures."  U.S. Const. Amend. IV.  Fourth Amendment protections extend to "brief investigatory stops of persons or cars that fall short of traditional arrest."  *United States v. Arvizu*, 534 U.S. 266, 273 (2002); see also *Terry v. Ohio*, 392 U.S. 1, 9 (1968).

**1.     Seizure**

"[W]hen an officer, by means of physical force or some show of authority, has in some way restrained the liberty of a citizen," a seizure occurs within the meaning of the Fourth Amendment. *Terry*, 392 U.S. at 19.  Here, the court finds that defendant Canton was seized when Sergeant Burnett

7

initiated the lights on his unmarked police car and pulled defendant Canton's car over, and defendant Canton complied (#45).  *Id; United States v. Smith*, 633 F.3d 889, 893 (9th Cir. 2011)(holding that "[i]n the absence of physical force, in order to constitute a seizure, an officer's show of authority must be accompanied by "submission to the assertion of authority."").

### a.      Reasonable Suspicion/Probable Cause

The Fourth Amendment requires that a seizure be, at a minimum, "reasonable," and an investigatory stop of a car is reasonable "only upon a showing of reasonable suspicion: a particularized and objective basis for suspecting the particular person stopped of criminal activity."  *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975); *Arvizu*, 534 at 273; *United States v. Caseres*, 533 F.3d 1064, 1068 (9th Cir. 2008); see also *United States v. Sokolow*, 490 U.S. 1, 7 (1989).   In determining reasonable suspicion, the court looks at the "totality of the circumstances," and must find that the reasonable suspicion was based on more than an "inchoate and unparticularized suspicion or 'hunch.'" *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (citing *Sokolow*, 490 U.S. at 7-8); see also *Terry*, 392 U.S. at 27; *Arvizu*, 534 U.S. at 273.

### i.  Relevant Law

In *Whren v. United States*, 517 U.S. 806 (1996), the court addressed the issue of whether a traffic violation, without more, creates reasonable suspicion to stop a car.  The defendant in *Whren* was driving in a high drug area and stopped at a stop sign for "an unusually long time," "turned suddenly," without signaling, and sped off at an "unreasonable speed."  *Whren,* 517 U.S. at 808.  Plain clothed officers stopped the car and one officer approached the driver's side door.  *Id.*   The officer identified himself as a police officer and directed the driver, defendant Whren, to put the car in park.  *Id.*  When the officer got closer to the driver's side window, he observed two large plastic nags of "What appeared to be crack cocaine in petitioner Whren's hands."  *Id* at 809.  The defendant and other passengers were arrested.  *Id.* The defendants filed a pretrial suppression motion, challenging the legality of the stop and the resulting

seizure of the drugs based on the argument that the stop was not justified by probable cause to believe, or even reasonable suspicion, that petitioners were engaged in illegal drug-dealing activity.  *Id.*  The court denied the motion and the defendants were convicted of the drug counts.  *Id.*

The Court of Appeals upheld the convictions, finding that "regardless of whether a police officer subjectively believes that the occupants of an automobile may be engaging in some other illegal behavior, a traffic stop is permissible as long as a reasonable officer in the same circumstances could have stopped the car for the suspected traffic violation."  *Id.*  The Supreme Court granted certiorari.  *Id.*  The Supreme Court held that "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. See *Prouse, supra*, at 659, 99 S.Ct., at 1399; *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977) (*per curiam*)."  *Id* at 810.   The petitioners argued that the court must examine the officer's subjective intent, and the court rejected this argument, holding that its previous rulings "foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved."  *Id* at 813.

The court concluded that "[h]ere the District Court found that the officers had probable cause to believe that petitioners had violated the traffic code. That rendered the stop reasonable under the Fourth Amendment, the evidence thereby discovered admissible, and the upholding of the convictions by the Court of Appeals for the District of Columbia Circuit correct. The judgment is Affirmed."  *Id* at 819.

### ii. Defendant Canton's Suspended Registration

Nevada Revised Statute 482.205 provides that "[e]xcept as otherwise provided in this chapter and NRS 706.188, every owner of a motor vehicle, trailer or semitrailer intended to be operated upon any highway in this State shall, before the motor vehicle, trailer or semitrailer can be operated, apply to the Department or a registered dealer for and obtain the registration thereof."  Sergeant Burnett testified that he ran the Suspect Car's license plate and that the search revealed that the car's registration was

suspended.  (#45).  Sergeant Burnett also testified that he decided to pull the Suspect Car over because of the suspended registration.  *Id.*  Defendant did not present any evidence or argument that the Suspect Car's registration was valid and not suspended at the time of the stop.  *Id.*

The court should find that Sergeant Burnett's decision to pull over the Suspect Car was reasonable under the Fourth Amendment.  Sergeant Burnett had "probable cause to believe that a traffic violation ha[d] occurred," as he received information that the registration of the Suspect Car was suspended, which is a violation of traffic code NRS 482.205.  *See Whren*, 517 U.S. at 810.  Sergeant Burnett's   subjective intent is irrelevant, and the Supreme Court has specifically rejected and "foreclose[d] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved."  *Id* at 813.  As the initial stop was reasonable and not in violation of the Fourth Amendment, the court must next examine the subsequent search of the Suspect Car.

### 2.    Search

With respect to warrantless searches, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment–subject only to a few specifically established and well delineated exceptions."  *Katz v. United States*, 389 F.2d 347, 357 (1967).  These exceptions include: (1) a search incident to a lawful arrest, *See Weeks v. United States*, 232 U.S. 383, 392 (1914), (2) a search "conducted pursuant to a valid consent of a person in control of the premises," *United States v. Kaplan*, 895 F.2d 618, 622 (9th Cir. 1990), (3) when vehicles are impounded, an inventory search conducted pursuant to guidelines for securing and inventorying the automobile's contents, *See e.g. South Dakota v. Opperman*, 428 U.S. 364, 369 (1976), and (4) a police officer conducting a suspicionless search of a "supervisee who is subject to a warrantless search condition," *Samson v. California*, 547 U.S. 843, 857 (2006).

### a.       Search Incident to Lawful Arrest

The "search incident to lawful arrest exception" derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations. *See United States v. Robinson*, 414 U.S. 218 (1973); *see also Chimel v. California*, 395 U.S. 752 (1969). Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. *See Arizona v. Gant*, 129 S.Ct. 1710 (2009). Defendant Canton did not address the search incident to lawful arrest exception in his motion (#28), and the government did not assert that this exception justified the warrantless search (#32). The testimony and arguments presented at the evidentiary hearing did not indicate that the search was conducted "incident to" defendant's arrest. (#45). The search incident to arrest exception does not apply.

### b.       Valid/Voluntary Consent

"A warrantless search is constitutional if conducted pursuant to the valid consent of a person in control of the premises. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)." *United States v. Kaplan,* 895 F.2d 618, 622 (9th Cir. 1990). Defendant Canton asserts that the "valid consent" exception does not apply to the search of the Suspect Car, as defendant "never gave any form of consent, limited or otherwise, to the taking apart of his vehicle." (#28); *See Kaplan*, 895 F.2d at 622. The government did not argue that the officers received consent to search the Suspect Car. (#32). Both Sergeant Burnett and Detective Ploense testified that they either did not ask for consent to search the Suspect Car or did not remember whether they asked, and that, either way, they did not received consent to search the Suspect Car. (#45). The "valid consent" exception does not apply.

### c.       Inventory Search of Impounded Vehicle

When a car is impounded, police may conduct an inventory search if they follow guidelines for securing and inventorying the car's contents. *See e.g. South Dakota v. Opperman*, 428 U.S. 364, 369

11

(1976). The Supreme Court recognizes three distinct needs for inventory searches: (1) the protection of the owner's property, (2) to protect police against claims or disputes concerning missing property and (3) the protection of police from potential danger. *Id.* An inventory search may not be used as a ruse for general rummaging in order to discover incriminating evidence. *Florida v. Wells*, 495 U.S. 1, 4 (1990).

Defendant did not address the inventory search of an impounded car exception. (#28). There was no testimony presented during the evidentiary hearing regarding impounding the Suspect Car. (#45). The search that occurred here was not an inventory search and this exception does not apply.

### d.      Search of Supervisee Pursuant to Warrantless Search Clause

The Fourth Amendment "does not prohibit a police officer from conducting a suspicionless search" of a supervisee who is subject to a warrantless search condition. *Samson v. California*, 547 U.S. 843, 857 (2006). The Supreme Court has held that "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Id.* at 850 (quoting *United States v. Knights*, 534 U.S. 112, 121 (2001). An officer, however, must have knowledge of the individual's status as a supervisee prior to the seizure in order to ensure that a Fourth Amendment violation does not occur. *Moreno v. Baca*, 431 F.3d 633 (9th Cir. 2005).

### i. Officer's Knowledge Of Status As A Supervisee

In *Moreno*, the Ninth Circuit held that an officer must have prior knowledge that the individual is a supervisee, and that "police officers cannot retroactively justify a suspicionless search...on the basis of an after-the-fact discovery of an arrest warrant or a parole condition." *Id.* at 641. The defendant in *Moreno* was walking down the street with another individual, when two officers drove past them, turned around, and stopped in their pathway. *Id.* at 636. The officers got out of the patrol car, patted the men down, and ordered them to place their belongings on the hood of the patrol car. *Id.* The officers placed

the men in the backseat of the patrol car and one of the officers began running the men's names for warrants.  *Id.*  The two men were asked if they were on parole or probation, and defendant Moreno stated that he was a parolee.  *Id.*  A search of the men's names revealed that defendant Moreno also had an outstanding arrest warrant.  *Id.*

The officers testified that defendant Moreno looked "startled" when he saw the patrol car approach, and that they observed defendant reach in his pocket and discard an object as the officers turned the car around.  *Id.*  After the men were in the patrol car and the officer began running their names, the other officer went to the location where the object was allegedly discarded, and found rock cocaine.  *Id.*  The officers let the other individual go, but arrested Moreno both for being in possession of rock cocaine and under the authority of the warrant.  *Id.*  The officers testified that "they were aware from their training and experience that a standard term of parole was that parolees were subject to warrantless searches by any peace officer."  *Id.* at 637.

Defendant Moreno was acquitted of the criminal charges against him, but filed an action under 42 U.S.C. § 1983 contending that the officers violated his Fourth Amendment right to be free from unreasonable searches and seizures.  *Id.*  It was undisputed that the officers "learned that Moreno was on parole and that he had an outstanding arrest warrant only after searching and detaining him."  *Id.*  The officers argued that Moreno had no right to be free from suspicionless arrests and searches because of the outstanding bench warrant and the parole condition.  *Id.*  The officers filed a motion for summary judgment based on qualified immunity, which the court denied.  *Id.*

The District Court found that reasonable suspicion was necessary, and held that the facts and circumstances of the incident "do not come close to the level of suspicion that existed" in cases where the court previously found reasonable suspicion.  *Id.*  The court also held that with regard to the defendant's "startled" look, "a suspect's nervousness at the sight of law enforcement, by itself, did not give rise to reasonable suspicion.  *Id.*  The officers' argument that the search was justified because of

13

defendant's outstanding warrant and parole search condition was rejected by the District Court as well. *Id.*  The officers appealed the District Court's ruling, and the Ninth Circuit affirmed.  *Id.*

The Ninth Circuit stated that "facts and circumstances within the officer's knowledge [must be] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Id.* at 639 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)).  The court must first undertake an "objective assessment of an officer's actions in light of the facts and circumstances *then known to him*." *Id.* (quoting *Scott v. United States*, 436 U.S. 128, 137, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)(emphasis added)).

The court found that since the officers <u>did not</u> know of the defendant's status as a parolee or that he was subject to an outstanding arrest warrant at the time they stopped, searched, and arrested him, reasonable suspicion was required.  *Id.*  In conclusion, the court held that "an officer must know of a detainee's parole status before that person can be detained and searched pursuant to a parole condition." *Id.*

Here, there testimony is clear.  When a car matching the description was observed in the area, Sergeant Burnett ran the Suspect Car's license plate, and discovered that the registered owner, Christopher Canton, was a probationer with special conditions of supervision.  (#45).  Sergeant Burnett knew that defendant Canton was a probationer who was not permitted to drive without a valid license <u>before</u> he initiated the stop of the Suspect Car.  *Id.*  When defendant Canton provided his suspended driver's license to Sergeant Burnett, Sergeant Burnett identified the driver of the car as probationer Christopher Canton.  *Id.*  The P&P Office was called, and P&P Officer Musheno came to the scene.  *Id.* <u>Before</u> the search was conducted, the P&P Officer spoke with defendant Canton, identified him as a probationer, and informed defendant Canton that he intended to invoke the search clause of his Probation Agreement.  *Id.*  Detective Ploense, who was acting as an agent of P&P Officer Musheno

during the search, testified that he knew that defendant was a probationer subject to a warrantless search clause <u>before</u> searching the Suspect Car.  *Id.*

As the searching officers knew of defendant Canton's status as a probationer <u>before</u> conducting the search, the court should find that reasonable suspicion is not necessary.  *See  Moreno*, 431 F.3d at 639.  The court must next determine if the search unreasonably intruded on defendant's expectation of privacy.

### ii.  Lower Expectation of Privacy

#### a. Relevant Law

In *United States v. King*, 711 F.3d 986 (9th Cir. 2013), the Ninth Circuit recently addressed the issue of whether the Fourth Amendment permits a suspicionless search of a probationer's residence, where the probationer has agreed to a suspicionless-search condition as part of a probation agreement. Defendant King was convicted of being a felon in possession of a firearm.  *King,* 711 F.3d at 987.  The defendant was a probationer subject to a suspicionless/warrantless search condition, and the officers suspected him of being involved with a homicide.  *Id* at 988.  When the officers learned of his status as a probationer, they searched his home and found an unloaded shotgun under the bed and arrested him.  *Id.* The defendant filed a motion to suppress, and the court denied the motion, holding that the officers had reasonable suspicion.  *Id.*   The defendant was convicted and appealed.  *Id.*   The majority of the Ninth Circuit panel concluded that the police lacked reasonable suspicion, but held that the district court properly denied the motion to suppress because under *United States v. Baker*, 658 F.3d 1050, 1055-66 (9th Cir. 2011), suspicionless search conditions for probationers do not violate the Fourth Amendment. *Id .*

Because *Baker* rested on the faulty premise that there is no difference between probationers and parolees for Fourth Amendment purposes, the en banc court issued a brief opinion overruling *Baker* and the related cases, vacating the panel opinion in this matter and remanding the case to the panel.  *United*

*States v. King*, 687 F.3d 1189 (9th Cir. 2012)(en banc)(per curiam).  The Ninth Circuit was left to decide "whether a suspicionless search, conducted pursuant to a condition of Defendant's probation, violates the Fourth Amendment."  *King,* 711 F.3d at 989.  The court began this inquiry by discussing *United States v. Knights*, 534 U.S. 112, 114, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001), where the Supreme Court upheld a warrantless search conducted pursuant to the terms of a defendant's probation, which authorized searches "with or without a search warrant, warrant of arrest or reasonable cause." *Id.*  The searching officers in *Knights* had reasonable suspicion that the defendant was involved in criminal activity, but did not obtain a warrant.  *Knights,* at 114–15, 122 S.Ct. 587.

The court held that "the search ... was reasonable under our general Fourth Amendment approach of examining the totality of the circumstances, with the probation search condition being a salient circumstance."  *Id.* at 118, 122 S.Ct. 587 (citation and internal quotation marks omitted).  The court did not, however, address the issue before the court in *King:* "whether the probation condition so diminished, or completely eliminated, [the defendant's] reasonable expectation of privacy ... that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment." *Id.* at 120 n. 6, 122 S.Ct. 587.

The Ninth Circuit next discussed the Supreme Court's decision in *Samson v. California*, 547 U.S. 843, 850, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006), where the Supreme Court considered whether a California law that authorizes searches of parolees "with or without a search warrant and with or without cause" violates the Constitution.  *King*, 711 F.3d at 989.  The Supreme Court used the same balancing test as in *Knights,* and held that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee."  *Samson*, at 857, 126 S.Ct. 2193.  The Ninth Circuit found that:

> In light of *Knights* and *Samson*, our task is to examine the totality of the circumstances to determine whether the suspicionless search of Defendant's residence was reasonable. *Id.* at 848, 126 S.Ct. 2193. To do so, we must "'assess[ ], on the one hand, the degree to which [the search] intrudes upon [Defendant's] privacy and, on the other, the degree to

which it is needed for the promotion of legitimate governmental interests." *Id.* (quoting *Knights*, 534 U.S. at 119, 122 S.Ct. 587).

*King*, 711 F.3d at 989-90. The court began the examination with the notion that "[d]efendant's status as a probationer means that he begins with a lower expectation of privacy than is enjoyed by a citizen who is not subject to a criminal sanction, and that "[p]robation, like incarceration, is a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty.... Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled." *Id* at 990 (quoting *Knights*, 534 U.S. at 119, 122 S.Ct. 587 (internal quotation marks omitted).

The court also considered the probation search condition to be a "salient circumstance," and found, as in *Knights*, that (1) the judge who sentenced the defendant to probation "determined that it was necessary to condition the probation on [his] acceptance of the search provision," (2) "[t]he probation order clearly expressed the search condition," (3) "[Defendant] was unambiguously informed of it," and (4) the defendant accepted the search condition. *Id*. Following both *Knights* and *Samson,* the court held that "acceptance of a clear and unambiguous search condition 'significantly diminished [a defendant's] reasonable expectation of privacy.'" *Samson*, 547 U.S. at 852, 126 S.Ct. 2193 (quoting *Knights,* 534 U.S. at 120, 122 S.Ct. 587)." *Id.*

 The court held that not only did defendant King begin with a lower expectation of privacy than an average citizen because he was a probationer, "but the probation search condition "significantly diminished" that lower expectation of privacy." *Id.* The court did not go so far as to hold that defendant King did not have an expectation of privacy at all, but did find that his "expectation of privacy was small." *Id.* With this small expectation of privacy in mind, the court concluded that "the search conducted here intruded on [d]efendant's legitimate expectation of privacy only slightly." *Id.* The court balanced this slight intrusion against the government's interests. *Id.*

The court held that "[o]n the other side of the balance, the government has several important interests," such as the state's interest in (1) ""apprehending violators of the criminal law, thereby protecting potential victims" from probationers' recidivism. *Knights*, 534 U.S. at 121, 122 S.Ct. 587," (2) "discovering criminal activity and preventing the destruction of evidence," and (3) "a probationer's successful completion of probation and in his or her reintegration into society." *Id.*   The court found that "the governmental interests at stake here "are substantial,"" and that "the state has a significant need to promote those interests through suspicionless searches of probationers." *Id.*  The court held that in "[b]alancing the slight intrusion on [d]efendant's expectation of privacy against the government's significant need to promote its legitimate governmental interests," "the search conducted here was reasonable." *Id* at 990-91.  The court made it clear that it does not condone suspicionless searches for the purpose of harassment or where a probationer is not subject to a suspisionless search condition, and held "only that a suspicionless search, conducted pursuant to a suspicionless-search condition of a probationer's probation agreement, does not violate the Fourth Amendment." *Id* at 991.

### b. The Search Pursuant to Defendant Canton's Warrantless Search Condition Did Not Violate the Fourth Amendment

The court here must examine the totality of the circumstances and engage in the same balancing test as the Ninth Circuit did in *King*, 711 F.3d 986.  There is no dispute before the court that defendant Canton, just as King, is a probationer.  (#45).  As such, defendant Canton begins with a "lower expectation of privacy than an average citizen." *See King*, 711 F.3d at 990.  Defendant Canton also signed a Probation Agreement (Exhibit 1) and <u>unambiguously</u> agreed to a warrantless search condition that the sentencing Judge believed was a necessary condition of probation.  (#45).  The warrantless search condition provides that "[y]ou shall submit your person, place of residence, vehicle or areas under your control to search at any time, with or without a search warrant or warrant of arrest, for evidence of a crime or violation of probation by the Division of Parole and Probation or its agent," and

is not limited in scope in any manner.  (Exhibit 1).  This warrantless search condition "significantly diminished" defendant Canton's "lower[ed] expectation of privacy."  *See King*, 711 F.3d at 990.

The court notes that the search in *King,* 711 F.3d 986, was conducted of defendant King's residence, and the search here was conducted of defendant Canton's car (#45).  The Supreme Court has "on numerous occasions pointed out that cars are not to be treated identically with houses or Apartments for Fourth Amendment purposes. See *United States v. Chadwick*, 433 U.S., at 12, 97 S.Ct., at 2484; *United States v. Martinez-Fuerte*, 428 U.S. 543, 561, 96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116 (1976); *Cardwell v. Lewis*, 417 U.S. 583, 590, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325 (1974) (plurality opinion)." *Rakas v. Illinois*, 439 U.S. 128, 148, 99 S. Ct. 421, 433, 58 L. Ed. 2d 387 (1978).  "[O]ne's expectation of privacy in an automobile and of freedom in its operation are significantly different from the traditional expectation of privacy and freedom in one's residence."  *Martinez-Fuerte,* 428 U.S. at 561, 96 S. Ct. at 3084-85, 49 L. Ed. 2d 1116.

Looking at the totality of the circumstances, with a "salient factor" being defendant Canton's lowered and "significantly diminished" expectation of privacy, the court should find that the search of the Suspect Car intruded on defendant Canton's expectation of privacy only slightly.  *See King,* 711 F.3d at 990.  Defendant Canton is a several time convicted felon who was on probation at the time of the incident.  (#45).  Defendant Canton was driving with suspended registration in an area known for gang activity.  *Id*.  The officers received information that a car matching the car Canton was driving contained a gun.  *Id.*  If the gun was in fact in defendant Canton's car, it would not only be a crime, but would be a violation of Canton's Probation Agreement (Exhibit 1).  *Id*.  After stopping the Suspect Car, the officers discovered that defendant Canton was driving on a suspended license in violation of his special probation condition.  *Id.*  The warrantless search clause of the Probation Agreement (Exhibit 1) provides that the search may be conducted to discover "evidence of a crime or violation of probation."  As established above, the officers knew of this condition <u>before</u> searching the car.

Upon a cursory search of Canton's car, Detective Ploense noticed that the cup holder was loose and appeared to have been removed in the past. *Id.* Testimony demonstrates that the cup holder was easily removed by Detective Ploense "popping" it up with his finger. *Id.* There is no evidence that the searching officers destroyed the Suspect Car to search in compartments or that the search was unreasonable in any manner. *See Id; King,* 711 F.3d at 988 (the court found that the search intruded on defendant's expectation of privacy "only slightly" where the officers searched under King's bed and found the shotgun). Detective Ploense or P&P Officer Musheno immediately stopped the search once the gun and prescription pills were found. (#45). The search conducted of defendant Canton's car, which included pooping up an already loose cup holder and stopped once evidence of a crime/probation violation was discovered, intruded on defendant Canton's expectation of privacy "only slightly." *See King,* 711 F.3d at 990.

The court must next balance this slight intrusion with the government's interests. As in *King,* the government here has several significant interests that outweigh the slight intrusion. The government has an interest in "apprehending violators of the criminal law, thereby protecting potential victims" from probationers' recidivism. *Knights*, 534 U.S. at 121, 122 S.Ct. 587." *King,* 711 F.3d at 990. Defendant Canton is a probationer (#45), and, as such, he is "more likely than the ordinary citizen to violate the law," and the recidivism rate is "significantly higher than the general crime rate." *Id* (internal quotations and citations omitted). The government also has an interest in "discovering criminal activity and preventing the destruction of evidence." *Id.* Defendant Canton's status as a probationer gives him "more incentive to conceal [his] criminal activities," as he knows he is subject to a warrantless search condition and faces revocation of his probation and possible incarceration. *Id* (quoting *Knights,* 534 U.S. at 120).

The government, and the court, has an interest in "a probationer's successful completion of probation and in his or her reintegration into society." *Id* at 991. The Ninth Circuit noted that "by

reducing recidivism, a state's "ability to conduct suspicionless searches of parolees [and probationers]... aids, rather than hinders, the reintegration of parolees into productive society." *Samson*, 547 U.S. at 854, 126 S.Ct. 2193." *Id.*  Here, the government has an interest in defendant Canton's successful completion of his probation and his reintegration into society, and the search furthered those interests, rather than hindered them.  The court should find that the government's significant interests outweigh the slight intrusion on defendant Canton's diminished expectation of privacy in the car he was driving, and that no Fourth Amendment violation occurred.  *See King*, 711 F.3d at 990.

**B.      Exclusionary Rule**

If the court determines that a seizure and/or search were unreasonable and in violation of the Fourth Amendment, any evidence obtained as a result of the seizure and/or search may not constitute proof against the victim of the violation.  *Wong Sun v. United States*, 371 U.S. 471, 484 (1963); *Terry*, 392 U.S. at 29.  As the court has been presented with evidence to support a finding that the warrantless search of the Suspect Car was justified under the Fourth Amendment, suppression of the evidence discovered by means of the search is not appropriate.  *Id.*

## RECOMMENDATION

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that Defendant Canton's Motion To Suppress (#28) should be DENIED.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual

issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 15th day of August, 2013.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE